IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICHARD PAUL HARRIS,

                Plaintiff,

v.

CHRISTOPHER GEISE,

                Defendants.

OPINION and ORDER

22-cv-387-wmc

---

    Plaintiff Richard Harris, who is representing himself, contends that Juneau County Sheriff Lt. Christopher Geise tased him repeatedly and unnecessarily in violation of his constitutional rights. Defendant filed a motion for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies, as well as a motion for summary judgment on the merits. Because the record shows that plaintiff exhausted his administrative remedies and there are genuine disputes of material fact regarding Geise's use of the taser under the circumstances, summary judgment will be denied, although the case will be stayed while the court attempts to recruit counsel to represent Harris at trial.

UNDISPUTED FACTS[1]

    On June 24, 2022, plaintiff Richard Harris was incarcerated at the Juneau County Jail as a pretrial detainee. Frustrated that he was being left in a holding cell, Harris asked the captain on duty, Captain Beier, when he would be moved to another cell. According to

---

[1] Unless otherwise indicated, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as from bodycam footage of the incident.

defendants, Harris actually told Captain Beier that he was bored, and unless moved, he would use peanut butter to cover his cell camera or engage in other misbehavior, though Harris denies making such threats.  Even so, Harris *does* concede that at some point, he climbed from the bunk in his cell to the top of a so-called "half-wall."  There also seems to be agreement that when Captain Beier ordered Harris to get down, he complied.  Beier decided that Harris should be moved into a cell without a half-wall, after which Captain Beier and a team of deputies went into his cell to assist with the move.  This was not a tense situation:  this was not a tactical team removal; Harris cooperated with his move into a neighboring cell, although he did continue to complain about his being held in the booking area.  According to defendants, he also attempted to cover the camera in the second cell with toilet paper, though he denies doing so.  Still, for some ongoing misbehavior, Captain Beier decided to place Harris in a restraint chair.  As a result, Beier, along with three jail deputies and defendant Lt. Geise, entered the second cell, handcuffed Harris behind his back, and moved him out of the cell to the restraint chair.  Again, this was not a tense situation, and Harris cooperated in exiting his cell, as well as in sitting in the restraint chair.

Once out of his cell and in the chair, the deputies and Lt. Giese began applying the restraints to Harris, who remained handcuffed behind his back throughout.  On the bodycam video, it appears that Harris not only cooperated by sitting in the restraint chair, but also as staff was initially applying the restraint straps to his torso, legs and feet.  Nevertheless, staff began ordering Harris to keep his left foot "down."  When Harris responded that he was, Captain Beier appears to attempt to hold Harris's knees in place manually to complete the strapping.  At that point, Lt. Geise also drew his taser and placed it on Harris's left thigh, followed by his order to Harris to put his foot down "flat" and "put [your] foot down now."

2

When Harris again responded that his foot was down, Lt. Giese stated, "No, it is not." Then without warning what would happen if he failed to comply, Giese tased Harris's thigh for one complete cycle (approximately five seconds). While Giese deployed the taser, Captain Beier appears to have successfully secured the restraint strap to Harris's left foot.

With his legs apparently secured by straps to the chair, the jail officers proceeded to tighten the torso straps and fasten other restraint straps to Harris, including a lap belt. It is difficult to see from the bodycam footage, but at one point, it appears that while a deputy was attempting to tighten the shoulder straps, another deputy ordered Harris to "lean back," then used both his hands to apply a pressure point hold under his chin and jaw, pulling his head backward. Around the same time, Lt. Geise deployed his taser once more, again without warning, this time in Harris's abdomen. Finally, Harris says that Geise used the taser on his sternum, though that is neither visible nor audible on the video footage. Eventually, Harris was fully secured in the restraint chair and moved back into a holding cell. Harris avers that he suffered multiple contact burns as a result of the taser.[2]

OPINION

Plaintiff is proceeding on a single claim in this lawsuit: defendant Lt. Geise's use of his taser constituted excessive force in violation of his Fourteenth Amendment rights.[3] Defendant contends that plaintiff's claim fails for two reasons. First, he argues that plaintiff failed to

---

[2] Defendant concedes in his summary judgment brief that plaintiff suffered "some injury" from the taser (dkt. #44, at 7), but neither side raises the extent of plaintiff's injury as an issue in their merits briefing.

[3] Notably, plaintiff is neither challenging his placement in the restraint chair nor the actions of any other officer.

exhaust his jail administrative remedies before filing this lawsuit. Second, he argues that Giese's use of force was reasonable under the circumstances or, at the very least, is protected by qualified immunity. The court addresses each of these arguments below.

I.   **Exhaustion**

A plaintiff who is confined in jail or prison may not bring a federal claim about his conditions of confinement until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a). This means that the prisoner must follow all the facility's rules for completing the grievance process, including any opportunity to appeal an initial denial. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). If a prisoner fails to exhaust his administrative remedies with respect to any claim before filing a federal lawsuit, the court must dismiss that unexhausted claim without prejudice, *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004), although a prisoner's failure to exhaust is an affirmative defense that the defendant must prove. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).

The Juneau County Jail's grievance procedure requires inmates to submit a grievance using an "inmate request form" within seven days of the challenged incident. (Dkt. #31-1, at 3.) In this case, plaintiff filed a grievance on the proper form on July 5, 2022, more than seven days after the June 24th tasing incident. Defendant argues that because plaintiff's grievance was untimely, he failed to exhaust his administrative remedies.

This argument fails. Certainly, plaintiff's grievance was technically untimely, but jail staff considered the merits of the grievance, stating that he was tased because he had failed to comply with deputy commands. (Dkt. #36-1, at 1.) Plaintiff then appealed that merits decision, and his appeal was denied on the ground that staff had already responded to plaintiff's initial grievance about the tasing incident. (*Id.* at 2.) If jail staff "choose to consider the merits

4

of an untimely grievance, then the claim has been exhausted." *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005); *see also Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) ("[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action.")  Therefore, defendant's motion for summary judgment on exhaustion grounds must be denied.

## II.   Excessive Force

Because plaintiff was a pretrial detainee at the time of the incident at issue in this case, his excessive force claim arises under the Due Process Clause of the Fourteenth Amendment. To succeed on an excessive force claim under the Fourteenth Amendment, a plaintiff must show that defendant's actions were objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 354 (7th Cir. 2018).  This determination is made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397.

In particular, courts must "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security."  *Id.* (internal quotation marks and alterations omitted).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

In reviewing an excessive force claim, relevant factors to be considered include:

5

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397 (citations omitted).  Here, the material facts regarding many of these factors are in dispute and the bodycam footage does not clarify matters, despite defendant's arguments to the contrary.  *See Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009) (summary judgment often inappropriate in excessive force cases where "parties typically tell different stories about what happened").

      If anything, in reviewing the video objectively, most of the *Kingsley* factors arguably weigh in *plaintiff's* favor.  Significantly, nothing in defendant's proposed findings of fact or the bodycam footage suggests that plaintiff posed any significant security threat to himself or jail staff at the time he was tased.  Rather, plaintiff's behavior in the video footage was cooperative right up to an apparent disagreement over whether his left foot was flat on the restraint chair's foot pedal, including his being placed in the restraint chair with little struggle.  Moreover, although multiple officers directed plaintiff to "put [his] foot down," and later to "lean back," plaintiff's own physical and verbal responses arguably suggest that he was attempting to comply with these orders.  Certainly there is nothing in the video footage to suggest that plaintiff was vigorously resisting or posing any real threat of harm to jail staff.  At the very least, a reasonably jury could conclude that defendant used his taser more out of impatience or retribution for being uncooperative more generally, rather than a need to maintain order, discipline or institutional security.  Accordingly, defendant is not entitled to summary judgment on the ground that his use of force was objectively reasonable.

For much the same reason, defendant is not entitled to qualified immunity. Under the doctrine of qualified immunity, a plaintiff may not obtain damages from a defendant for a constitutional violation unless the plaintiff shows not only that the defendant violated his rights, but also that his rights were clearly established at the relevant time. *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019). The plaintiff can meet this burden by pointing to either: (1) a closely analogous, binding case that was decided in his favor; (2) a more general constitutional rule that applies "with obvious clarity" to the defendant's conduct. *Cibulka v. City of Madison*, 992 F.3d 633, 639–40 (7th Cir. 2021). In deciding whether a defendant is entitled to qualified immunity on a motion for summary judgment, the court must view the evidence in the light most favorable to the plaintiff and ask whether a reasonable jury could find that the defendants violated the plaintiff's clearly established rights. *Jerger v. Blaize*, 41 F.4th 910, 913 (7th Cir. 2022); *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017).

The Seventh Circuit has identified two "guideposts" for district courts to consider when evaluating qualified immunity in excessive force cases involving tasers. *Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018). First, "an officer's use of a Taser against an actively resisting subject either does not violate a clearly established right or is constitutionally reasonable." *Id.* Examples of active resistance include: "kicking and flailing," *Clarett v. Roberts*, 657 F.3d 664, 674–75 (7th Cir. 2011); declining to follow instructions while acting in a belligerent manner, *Forrest v. Prine*, 620 F.3d 739, 745–46 (7th Cir. 2010); and swatting an arresting officer's hands away while backpedaling, *Brooks v. City of Aurora*, 653 F.3d 478, 481 (7th Cir. 2011). "The second guidepost is that an officer may not use significant force (like a Taser) against a 'nonresisting or passively resisting' subject." *Dockery*, 911 F.3d at 467 (citing *Morfin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003) (rejecting a defense of

qualified immunity where officers used force against a "docile and cooperative" suspect who posed no threat and was not resisting).)

Under plaintiff's version of events, he was a "nonresisting or passively resisting" subject who was cooperating with defendant and other jail staff and who presented no threat. As discussed, the bodycam footage does not contradict plaintiff's version of events which, if accepted as true, precluded defendant from deploying his taser under clearly established law. Accordingly, defendant is not entitled to qualified immunity.

### III.    Recruitment of Counsel

Because this case is proceeding to trial, the court also concludes that it is appropriate to recruit counsel for plaintiff. Although plaintiff was able to defeat defendant's summary judgment motions, some of his filings were untimely and difficult to understand, and trial preparation will likely be more demanding than the proceedings in the case so far. Thus, this court is persuaded that the case has progressed to the point where difficulties exceed plaintiff's ability to proceed to trial on his own. The court will attempt to recruit counsel to represent plaintiff. In the meantime, the trial date will be stricken and the proceedings stayed.

The court typically attempts to recruit counsel for unrepresented plaintiffs for about one year. If the court can recruit counsel to represent plaintiff, then the court will set a status conference to set a new schedule for this case. If the court cannot find counsel to represent plaintiff, he may have to proceed to trial on his own. In addition, plaintiff may notify the court at any time if he would prefer to continue representing himself, and the court will reschedule the trial. Finally, the parties may contact the court at any time if they are interested in mediating a resolution of this case.

ORDER

IT IS ORDERED that:

1. Defendant Christopher Geise's motions for summary judgment (dkt. #29 and dkt. #43) are DENIED.

2. The trial date and all other dates in the Pretrial Conference Order (dkt. #27), are STRUCK. Proceedings in this case are stayed until May 1, 2025, or until counsel is recruited for plaintiff, whichever occurs first. If the court finds counsel willing to represent plaintiff, the court will advise the parties and schedule a status conference. If the court does not find counsel by May 1, 2025, then it will schedule a status conference shortly after that date to establish a new trial date.
Entered this 9th day of May, 2024.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge